Case 2:18-cv-00459   Document 48   Filed on 03/30/20 in TXSD   Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
March 30, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHN T. PATRICK, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-459 |
| | § | |
| LANNETTE LINTHICUM, *et al*, | § | |
| | § | |
| Defendants. | § | |

# MEMORANDUM AND RECOMMENDATION
# TO GRANT DEFENDANT TANYA LAWSON'S MOTION FOR
# SUMMARY JUDGMENT AND DENY PLAINTIFF'S MOTIONS

Plaintiff John T. Patrick is a Texas inmate appearing *pro se* and *in forma pauperis*. In this prisoner civil rights action, Plaintiff claims that prison officials acted with deliberate indifference to his serious medical needs with regard to the taking of his prescription eyeglasses in 2018. Pending before the Court is: (1) Defendant Tanya Lawson's Motion for Summary Judgment (D.E. 39); (2) Plaintiff's Motion for the Court to Order Defendant Lawson to Speed up the Process for Replacement of Prescribed Glasses (D.E. 43); (3) Plaintiff's Motion to Alter or Amend Judgment (D.E. 44); (4) Plaintiff's Motion for Preliminary Injunction (D.E. 46); and (5) and Plaintiff's Motion for Intervention in this Action (D.E. 47). For the reasons stated herein, it is respectfully recommended that the Court grant Defendant Lawson's summary judgment motion and deny Plaintiff's motions.

## I.   JURISDICTION

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.  This case was referred to the undersigned United States Magistrate Judge for case management and to furnish a recommendation pursuant to 28 U.S.C. § 636.

## II.   PROCEDURAL BACKGROUND

Plaintiff's claims in this lawsuit occurred in connection with his current assignment to the McConnell Unit in Beeville, Texas. On October 4, 2018, Plaintiff filed his original complaint against the following officials: (1) Dr. Lannette Linthicum; Director Health Services Division; (2) Tanya Lawson, Senior Practice Manager at the McConnell Unit; (3) Jose Chapa, Registered Nurse (RN) at the McConnell Unit; and (4) Rosa Martinez, CCA[1] at the McConnell Unit. Plaintiff alleges that his prescription eyeglasses were taken from him on April 24, 2018, and that Defendants acted with deliberate indifference to his serious medical needs by not allowing him to obtain either replacement prescription eyeglasses or appropriate medical assistance to ascertain his vision impairment issues. Plaintiff seeks monetary and injunctive relief.

Following a *Spears*[2] hearing, the undersigned issued a Memorandum and Recommendation (M&R), recommending that: (1) Plaintiff's deliberate indifference claim against Manager Lawson be retained in her individual capacity for monetary relief and in her official capacity for injunctive relief; (2) Plaintiff's claims for money damages against all Defendants in their official capacities be dismissed as barred by the Eleventh

---

[1] Plaintiff has provided no information to clarify what the title "CCA" means.

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

Amendment; and (3) Plaintiff's claims against the remaining defendants be dismissed for failure to state a claim and/or as frivolous. (D.E. 11). The undersigned ordered service of Plaintiff's complaint on Manager Lawson. (D.E. 12). On May 3, 2019, Manager Lawson filed her answer. (D.E. 14).

Senior United States District Judge Hilda G. Tagle subsequently ordered Defendants to advise the Court as to whether Plaintiff had received his prescription eyeglasses or other appropriate medical assistance to ascertain his vision impairment issues. (D.E. 17). On May 31, 2019, the Office of the Attorney General (OAG) advised the Court that Plaintiff had been seen by an optometrist on April 30, 2019 and that prescription eyeglasses had been ordered for him. (D.E. 18). The OAG further advised the Court that Plaintiff had not yet received his prescription eyeglasses. (D.E. 18).

On June 5, 2019, Judge Tagle adopted the M&R. (D.E. 23). In a motion dated June 21, 2019, Plaintiff moved the Court to direct Manager Lawson to explain the delay in Plaintiff receiving his prescription eyeglasses. (D.E. 25, p. 2). Plaintiff subsequently admitted that he received his prescription eyeglasses on June 25, 2019. (D.E. 28, p. 1). The undersigned, therefore, denied his motion seeking an explanation from Manager Lawson as moot. (D.E. 38, p. 3).

On August 28, 2019, Plaintiff filed a motion seeking to amend his complaint. (D.E. 28). Specifically, Plaintiff sought to add the following new allegations: (1) on August 14, 2019, a medical official named Rodriguez witnessed a use of force against Plaintiff; (2) during the use of force, Rodriguez directed Officers Gutierrez and Lane to confiscate Plaintiff's prescription eyeglasses he had received on June 25, 2019; and (3)

Plaintiff's eyeglasses were thrown into the trash can. (D.E. 28, p. 2). Plaintiff claimed that Rodriguez acted with deliberate indifference toward Plaintiff's health concerns by taking his prescription eyeglasses. (D.E. 28, p. 2). On October 8, 2019, the undersigned denied Plaintiff's motion to amend on the basis that: (1) his new claim arose after the filing of his complaint and out of separate transactions and occurrences as compared to his deliberate indifference claim against Manager Lawson; and (2) Plaintiff's new deliberate indifference claim did not involve the same defendants in this case. (D.E. 38, pp. 4-6). The undersigned instructed Plaintiff that he may seek to pursue his new deliberate indifference claim in a separate cause of action. (D.E. 38, p. 6).

On October 25, 2019, Manager Lawson filed her Motion for Summary Judgment. (D.E. 39). In response, Plaintiff has submitted the following: (1) a Motion for the Court to Order Defendant Tanya Lawson to Speed up the Process for Replacement of Prescribed Glasses (D.E. 43); (2) a Motion to Alter or Amend Judgment (D.E. 44); (3) Plaintiff's Declaration (D.E. 45); (4) a Motion for Preliminary Injunction (D.E. 46); and (5) a Motion for Intervention in this Action (D.E. 47).

### III. SUMMARY JUDGMENT EVIDENCE

Manager Lawson offers the following summary judgment evidence:

Exh. A:    Plaintiff's Relevant Grievance Records (D.E. 39-1).

Exh. B:    Plaintiff's Relevant Medical Records (D.E. 41).

Plaintiff, in turn, has attached the following evidence in response to the summary judgment motion: (1) Plaintiff's sick call requests (D.E. 43, pp. 4-8); (2) Plaintiff's

Optometry Record, dated April 30, 2019 (D.E. 43, p. 9); (3) Plaintiff's I-60 Requests (D.E. 44); and (4) Plaintiff's Declaration with attached exhibits (D.E. 45, 45-1, 45-2).

Lastly, Plaintiff's verified complaint, attachments thereto, and testimony at the *Spears* hearing also serve as competent summary judgment evidence. *See Garrett v. Davis*, No. 2:14-CV-70, 2017 WL 1044969, at *3 (S.D. Tex. Mar. 20, 2017). Like other parts of the record, Plaintiff's verified complaint and *Spears*-hearing testimony must satisfy Federal Rule of Civil Procedure 56(c) in order to be considered at summary judgment. *See Mengele v. AT&T Servs. Inc.*, No. 3:15-cv-3934, 2017 WL 3835871, at *3 (N.D. Tex. Aug. 9, 2017) ("[T]he verified complaint and sworn interrogatory answers of the *pro se* litigant can be considered as summary judgment evidence *to the extent that such pleadings comport with the requirements of current Rule 56(c)*.") (emphasis added) (citations omitted).

The undersigned, therefore, will not consider parts of Plaintiff's verified complaint or *Spears*-hearing testimony that are not made on personal knowledge or that would be inadmissible in evidence. *See* Fed. R. Civ. P. 56(c)(4). Accordingly, the competent summary judgment evidence establishes the following.

    **A.**   **Plaintiff's Evidence**

        *(1) Plaintiff's Verified Complaint and Spears Hearing Testimony*

Plaintiff arrived at the McConnell Unit on March 28, 2018. On or about April 24, 2018, Officer M. Salazar entered Plaintiff's cell and confiscated Plaintiff's jacket while Plaintiff was working and not present in the cell. Plaintiff's prescription eyeglasses were inside the jacket.

Plaintiff's prescription eyeglasses are bifocals which he uses for reading. Plaintiff testified that he cannot see without his prescription eyeglasses. At the time of the Spears hearing, Plaintiff wore two "readers" for reading purposes. In order to get a new prescription for his "severely bad" vision, Plaintiff wrote the medical department on three occasions, April 30, 2018, May 21, 2018, and August 17, 2018. Defendants Martinez and Chapa responded to Plaintiff's written correspondence, informing Plaintiff that he could only obtain glasses once every two years unless he paid for them. These defendants refused to charge Plaintiff's account so that he could pay for new eyeglasses.

Plaintiff attempted to resolve the matter with Manager Lawson who, according to Plaintiff, proceeded to give Plaintiff the same runaround as Defendants Martinez and Chapa. Manager Lawson, who is the decision maker responsible for medical issues at the McConnell Unit, informed Plaintiff that he could not get prescription eyeglasses unless he paid for them. Plaintiff indicated, however, that he was willing to pay for new eyeglasses.

### (2)  *Plaintiff's Exhibits*

Plaintiff submitted an I-60 complaint to the McConnell Unit's medical department on April 30, 2018, seeking replacement prescription eyeglasses because he was "practically blind without" his eyeglasses. (D.E. 44, pp. 1-2). CCA Martinez responded three days later, instructing Plaintiff that: (1) he needed to wait until March 2019 for new prescription eyeglasses; or (2) he could pay for the eyeglasses himself in the amount of $20.44. (D.E. 44, p. 2).

In an I-60 complaint dated May 21, 2018, Plaintiff asked if there was any way for someone to pay for his eyeglasses because a hold had been placed on his inmate trust fund account. (D.E. 44, pp. 3-4). CCA Martinez responded that funds must be taken out of Plaintiff's account and that "Huntsville has to approve this transaction." (D.E. 44, p. 4).

In an I-60 complaint dated August 17, 2018, Plaintiff complained that he needed eyeglasses due to his bad vision. (D.E. 44, pp. 5-6). Plaintiff further requested an eye examination within thirty days. (D.E. 44, p. 6). RN Chapa responded that Plaintiff was not eligible for new eyeglasses until April 2019. (D.E. 44, p. 6).

On April 30, 2019, an optometry examination was conducted on Plaintiff. (D.E. 43, p. 9). Plaintiff received a new pair of prescription eyeglasses on June 30, 2019. (D.E. 43, p. 8). On August 14, 2019, Lt. Gutierrez confiscated Plaintiff's property including his prescription eyeglasses. (D.E. 43, p. 8). With the authorization of a prison official named Rodriguez, these eyeglasses were thrown away. (D.E. 43, p. 8).

B. **Manager Lawson's Evidence**

Plaintiff filed a Step 1 grievance (Grievance No. 2018157063) on June 29, 2018, complaining about his failure to receive prescription eyeglasses for his chronic vision condition. (D.E. 39-1, pp. 3, 5). Plaintiff sought either a new set of glasses or an appointment with optometry for a new examination. Manager Lawson rejected this grievance, concluding that Plaintiff had yet to submit a sick call complaint which detailed his eyesight as worsening. (D.E. 39-1, p. 5). Manager Lawson explained to Plaintiff that: (1) eyeglasses may only be replaced every two years unless he could provide

documentation that his eyeglasses were confiscated or lost by security; and (2) he may submit a sick call request for a Visual Acuity Test (VAT) and, if Plaintiff had experienced a significant enough change in his eyesight, he may be approved for new glasses. (D.E. 39-1, pp. 5-8).

Plaintiff filed a Step 2 grievance on August 17, 2018. (D.E. 1, pp. 9-10). This grievance was denied on the following grounds: (1) Plaintiff failed to successfully document that his glasses were lost in April 2018; (2) Plaintiff must pay for new glasses prior to two years passing since he received his last pair; (3) Plaintiff may submit a sick call request for a VAT due to his vision difficulties; and (4) if the VAT shows a significant vision change, Plaintiff may obtain a referral to optometry. (D.E. 1, p. 10).

### IV. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or

evaluate the credibility of witnesses. *Id.* Furthermore, affidavits or declarations "must be made on personal knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. *Id.* Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. *Bazan v. Hidalgo County*, 46 F.3d 481, 490 (5th Cir. 2001).

## V.   DISCUSSION

### A.   Manager Lawson in her Individual Capacity

Manager Lawson contends in her summary judgment motion that she is entitled to qualified immunity with respect to Plaintiff's deliberate indifference claim. (D.E. 39, pp. 2, 4-8). The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).

To discharge his burden, the plaintiff must satisfy a two-prong test. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251-52 (5th Cir. 2005). First, he must claim that the defendants committed a constitutional violation under current law. *Id.* (citation omitted). Second, he must claim that defendants' actions were objectively unreasonable in light of

the law that was clearly established when the violation occurred. *Id.; Tolan v. Cotton*, 572 U.S. 650, 656 (2014). While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. *Pearson*, 555 U.S. at 236 (receding from *Saucier v. Katz*, 533 U.S. 194 (2001)).

### (1) Step 1 – Constitutional Violation

Plaintiff claims that Manager Lawson acted with deliberate indifference to his serious medical needs by refusing to provide him with prescription eyeglasses or otherwise assist him with his vision impairment condition. The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation omitted). A prison official violates this duty when by act or omission he is deliberately indifferent to prison conditions which pose a substantial risk of serious harm. *Id.* at 834.

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege that prison officials acted with deliberate indifference to serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Deliberate indifference requires that prison officials both be aware of specific facts from which the

inference could be drawn that a serious medical need exists and then the prison official, perceiving the risk, must deliberately fail to act. *Farmer*, 511 U.S. at 837.

In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm*." *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (emphasis in original).

"Deliberate indifference is an "extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982). Furthermore, "unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012).

The denial of eyeglasses by prison officials can, under some circumstances, cause serious harm to a prisoner and constitute an Eighth Amendment violation. *See Newman v. Alabama*, 503 F.2d 1320, 1331 (5th Cir. 1974). *See also Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d. Cir. 1996) (holding that the denial of prescription eyeglasses to an inmate

suffering double vision and loss of depth perception due to head injury may constitute deliberate indifference); *Avila v. Landgrebe*, No. H-12-2315, 2013 WL 1336586, at *6 (S.D. Tex. Mar. 29, 2013) ("Glasses are necessary and must be issued when an inmate is blind and unable to function without them."). The failure to issue eyeglasses, however, does not support a deliberate indifference claim "where there is no showing of substantial harm or that the defendants were subjectively aware of the inmate's need." *Avila*, 2013 WL 1336586, at *6 (citing *Thomas v. Owens*, 345 F. App'x 892, 896 (5th Cir. 2009)).

Manager Lawson contends in her summary judgment motion that that there is "no evidence or allegation [to suggest] that [Plaintiff] was subjected to a substantial risk of harm, that [Manager] Lawson was aware of such a substantial risk of harm to [Plaintiff], or that [Manager] Lawson drew such an inference." (D.E. 39, p. 7). In his various motions filed in response to the summary judgment motion, Plaintiff responds with a general statement that Manager Lawson and her staff have no respect for the Constitution, federal law, and Plaintiff's health. (D.E. 43, p. 2).

The uncontroverted summary judgment evidence presented in this case shows that: (1) on or about April 24, 2018, Officer Salazar confiscated Plaintiff's prescription eyeglasses while Plaintiff was working and not present in his cell; (2) Plaintiff submitted three I-60 complaint's to the McConnell Unit's medical department on April 30, 2018, May 21, 2018, and August 17, 2018, respectively (D.E. 44, pp. 1-6); (3) CCA Martinez responded to the first I-60 complaint, directing Plaintiff that he needed to wait until March 2019 for new prescription glasses or pay for the eyeglasses himself (D.E. 44, pp. 1-2); (4) CCA Martinez responded to the second I-60 complaint, instructing Plaintiff that

13 / 19

funds to pay for new eyeglasses must be taken out of Plaintiff's account and that any transaction for new eyeglasses must be approved by Huntsville (D.E. 44, p. 4); (5) RN Chapa responded to Plaintiff's third I-60 complaint by stating that Plaintiff was not eligible for new prescription eyeglasses until April 2019 (D.E. 44, p. 6); (6) Manager Lawson rejected Plaintiff's Step 1 grievance (Grievance No. 2018157063), dated June 29, 2018, complaining about prison official's failure to provide him with prescription eyeglasses for his chronic vision condition. (D.E. 39-1, pp. 3, 5); (7) in denying the grievance, Manager Lawson explained that: (a) Plaintiff had had yet to submit a sick call complaint which detailed his eyesight as worsening; (b) prescription eyeglasses may only be replaced every two years unless he provided documentation that his eyeglasses were confiscated or lost by security; and (c) he may submit a sick call request for a VAT and, if Plaintiff had experienced a significant enough change in his eyesight, he may be approved for new glasses. (D.E. 39-1, pp. 5-8); (8) on April 30, 2019, an optometry examination was conducted on Plaintiff (D.E. 43, p. 9); (9) Plaintiff received a new pair of prescription eyeglasses on June 30, 2019. (D.E. 43, p. 8).

While stating in his I-60s in a conclusory manner that the lack of prescription eyeglasses left him "practically blind," Plaintiff has come forward with no evidence to show that he was substantially harmed by the delay in him receiving prescription eyeglasses on June 30, 2019. Indeed, he presents no evidence to suggest that he was unable to function at all during this period of time.

Plaintiff further has provided no evidence to show that Manager Lawson was aware of a substantial risk of serious harm to Plaintiff and then disregarded that risk in

14 / 19

failing to help Plaintiff. In her response to Plaintiff's Step 1 grievance, Manager Lawson explained the policies in place with respect to the acquisition of prescription eyeglasses, including the fact that Plaintiff may seek to obtain a VAT test to show that his eyesight had worsened. After Plaintiff received an optometry test, he was then provided with his prescription eyeglasses. Overall, no competent summary evidence has been presented to show that Manager Lawson's conduct "clearly evince[d] a wanton disregard for [Plaintiff's] serious medical needs." *See Gobert*, 463 F.3d at 346.

At best, Plaintiff's allegations reveal his frustration at his perceived lack of attention provided to him by Manager Lawson to provide him with prescription eyeglasses or with relief in connection with his vision impairment issue. However, as discussed above, the competent summary judgment evidence reflects that Manager Lawson did not ignore his complaints and that any delays in receiving his prescription eyeglasses on June 30, 2019 did not result in any substantial harm. *Easter*, 467 F.3d at 464; *Gobert*, 463 F.3d at 346. Thus, even when taking as true the evidence in a light most favorable to Plaintiff, the uncontroverted summary judgment evidence demonstrates that Plaintiff has failed to state an Eighth Amendment claim of deliberate indifference against Manager Lawson in her individual capacity.[3]

---

[3] In his various motions filed in response to Manager Lawson's summary judgment motion, Plaintiff primarily complains that the prescription eyeglasses provided to him on June 30, 2019, were confiscated from him on August 14, 2019, by prison officials not named this complaint. The undersigned, however, previously denied Plaintiff's motion to add a deliberate indifference claim arising from the alleged taking of his prescription eyeglasses on August 14, 2019. Accordingly, the undersigned disregards both Plaintiff's arguments and evidence submitted in connection with the taking of his eyeglasses on August 14, 2019.

**(2) Step 2 – *Objective reasonableness***

Because Plaintiff has failed to state a constitutional violation as to Manager Lawson in her individual capacity, it is unnecessary to examine whether her actions were reasonable. *See Saucier*, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate). Thus, it is respectfully recommended that Manager Lawson be granted summary judgment in her favor as to Plaintiff's deliberate indifference claim in her individual capacity and that such claim be dismissed with prejudice.

**B.     Manager Lawson in her Official Capacity**

With respect to his deliberate indifference claim, Plaintiff seeks injunctive relief against Manager Lawson in her official capacity. The uncontroverted summary judgment evidence reflects that Plaintiff received new prescription eyeglasses on June 30, 2019. (D.E. 43, pp. 8-9). Plaintiff, however, seeks injunctive relief in the form of a policy change to correct the difficulties he faced in obtaining new eyeglasses. (D.E. 1, p. 4).

As discussed above, Plaintiff's underlying deliberate indifference claim against Manager Lawson lacks factual support and is subject to dismissal. Thus, his claim seeking injunctive relief against Manager Lawson in her official capacity is also subject to dismissal. *See Duarte v. City of Lewisville*, 136 F. Supp. 3d 752, 791 (E.D. Tex. Sep. 28, 2015) (explaining that "a claim for injunctive relief is a remedy that does not stand alone, but requires a viable underlying legal claim"). Accordingly, the undersigned respectfully recommends that Manager Lawson be granted summary judgment with

respect to Plaintiff's deliberate indifference claim seeking injunctive relief against Manager Lawson in her official capacity.

### C. Plaintiff's Motions

Plaintiff has filed several motions in which he appears to seek preliminary injunctive relief in this case. (D.E. 43, 46, 47). Plaintiff asks that the Court direct prison officials at the McConnell Unit to provide him with prescription sunglasses. In each of these motions, Plaintiff references the taking of his prescription eyeglasses on August 14, 2019. As set forth in the October 8, 2019 Order (D.E. 38), however, Plaintiff's claims regarding the taking of his eyeglasses on that date should be brought in a separate action.

Plaintiff otherwise is not entitled to preliminary injunctive relief as he cannot establish a substantial likelihood of success on the merits of the claims advanced in this case. *See Texans for Free Enterprise v. Texas Ethics Com'n*, 732 F.3d 535, 536-37 (5th Cir. 2013) (setting forth that a movant must demonstrate, *inter alia*, a substantial likelihood of success on the merits to be entitled to preliminary injunctive relief). Accordingly, the undersigned recommends that Plaintiff's motion seeking preliminary injunctive relief (D.E. 43, 46, 47) be denied.

Lastly, Plaintiff has filed a series of exhibits that have been docketed as a Motion to Alter or Amend Judgment. (D.E. 44). No judgment, however, has been entered in this case. Plaintiff's series of exhibits further contain no discernible argument that would support the reconsideration of any order or recommendation issued in this case. Accordingly, the undersigned recommends that Plaintiff's Motion to Alter or Amend Judgment (D.E. 44) be denied.

## VI. RECOMMENDATION

Based on the foregoing, the competent summary judgment evidence establishes that Plaintiff's Eighth Amendment deliberate indifference claim is subject to dismissal and that Manager Lawson is entitled to qualified immunity. Accordingly, it is respectfully recommended that the Court **GRANT** Manager Lawson's Motion for Summary Judgment (D.E. 39) and **DISMISS** Plaintiff's Eighth Amendment claim with prejudice against her in her individual and official capacity. It is respectfully recommended further that the Court **DENY** Plaintiff's Motion for the Court to Order Manager Lawson to Speed up the Process for Replacement of Prescribed Glasses (D.E. 43), Plaintiff's Motion to Alter or Amend Judgment (D.E. 44), Plaintiff's Motion for Preliminary Injunction (D.E. 46), and Plaintiff's Motion for Intervention in this Action (D.E. 47).

Respectfully submitted this 30th day of March 2020.

                                                                Jason B. Libby
                                      United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file the Findings and Recommendation on Plea of Guilty and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Crim. P. 59(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).*